UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK D. CURCIO, IV *ex rel.* *UNITED STATES OF AMERICA*,<br><br>Plaintiffs,<br><br>v.<br><br>CCS MEDICAL, INC., DEGC ENTERPRISES (U.S.), INC., HIGHLAND CAPITAL MANAGEMENT, LP, MEDICAL EXPRESS DEPOT, INC., MEDSTAR DIABETIC SUPPLY, LP, MP TOTALCARE MEDICAL, INC., and MP TOTALCARE SERVICES, INC.,<br><br>Defendants. | Civil Action No.<br><br>19-5527 (SDW) (LDW)<br><br>**MEMORANDUM OPINION AND ORDER OF TRANSFER** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is the motion of Plaintiff-Relator Frederick D. Curcio, IV ("Relator") to transfer venue of this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). (ECF No. 37).[1] Defendants CCS Medical, Inc., DEGC Enterprises (U.S.) Inc., Medical Express Depot, Inc., MedStar Diabetic Supply, LP, MP Totalcare Services, Inc., and MP Totalcare Medical, Inc. (collectively, "Defendants"), through their counsel, oppose transfer entirely, and argue in the alternative that if the action is to be transferred, the Middle District of Florida is the appropriate

---

[1] On June 20, 2023, Relator filed a motion to withdraw this transfer motion. (ECF No. 65). Subsequently, on June 27, 2023, Relator renewed the instant motion to transfer venue and asked the Court to disregard the motion to withdraw the motion. (ECF No. 70). On the same date, the undersigned convened a telephonic conference with counsel for the parties, during which counsel for both sides reiterated the positions set forth in their briefing of this Motion to Transfer. (ECF Nos. 37, 55, 58). The Court, accordingly, adjudicates the instant motion without regard to that intervening filing, which, having been withdrawn by Relator (ECF No. 70) shall be terminated.

transferee court. (ECF No. 55).[2] The Court decides the Motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[3] Having considered the parties' written submissions (ECF Nos. 37, 55, 58), and for the reasons set forth below, Relator's Motion is **GRANTED**. The Court, therefore, in its discretion, will transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Texas.

## I.   BACKGROUND

Relator initiated this *qui tam* action in this Court on February 11, 2019, seeking to recover damages and civil penalties on behalf of the United States for Defendants' alleged violations of the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"), the Civil Monetary Penalties Law, 42 U.S.C. §§ 1320a-7a, and the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812. (Complaint, ECF No. 1 at 1). Relator is a resident of Texas and former Dallas, Texas-based employee of Defendant CCS. (ECF No. 37-1 at 6, 10). Defendants are related entities engaged in the medical supply business "focused on diabetic, wound care, ostomy, and urological durable medical equipment, prosthetics, orthotics, and supplies ('DMEPOS')." (ECF No. 37-1 at 6). Each of the defendant entities is incorporated outside of New Jersey – in Delaware, Florida, Texas, Pennsylvania, Colorado, and

---

[2]   Relator advises that the United States, which declined to intervene in the action but is named as a party in interest, has consented to transfer to the Northern District of Texas. (*See* ECF Nos. 37-1 at 5 n.1; 58 at 3). Relator additionally advises that Highland Capital Management, LP, which was named in the Complaint but has never appeared in the action, has indicated that it does not oppose transfer to that proposed transferee court, though it maintains the claims against it must be brought, once transferred, in the Northern District of Texas Bankruptcy Court. (ECF No. 37-1 at 5 n.1).

[3]   The undersigned issues this Memorandum Opinion in lieu of a Report and Recommendation because the relief sought in this motion is not dispositive of any claim or defense asserted in the action. Fed. R. Civ. P. 72. *See, e.g., Vuoncino v. Forterra, Inc.*, Civ. A. No. 18-02437 (CCC) (ESK), 2021 WL 1589356 (D.N.J. Apr. 22, 2021) (treating transfer as non-dispositive); *Griggs v. Swift Transportation Co.*, Civ. A. No. 217-13480 (MCA)(SCM), 2018 WL 3966304, at *2 n.15 (D.N.J. Aug. 17, 2018) (same); *Stalwart Capital, LLC v. Warren St. Partners, LLC*, No. 11-5249, 2012 WL 1533637, at *1 (D.N.J. Apr. 30, 2012) (same).

Georgia, respectively – and each maintains its principal place of business in Farmers Branch, Texas, a suburb outside of Dallas. (*See* Am. Compl., ECF No. 18 ¶¶ 16-21). In the Complaint, Relator alleges Defendants defrauded the United States, as well as several states, by submitting false claims worth many millions of dollars to federal and state government health programs. (*See id.* ¶¶ 1-13).

The United States investigated the claims asserted in the Relator's Complaint and, on July 2, 2021, notified the Court of its election to decline to intervene in the action pursuant to the FCA. 31 U.S.C. § 3730(b)(4)(B). (ECF No. 8). Accordingly, the case was unsealed, and the docket filings became publicly available. (*See id.*). Relator filed an Amended Complaint on November 17, 2021. (ECF No. 18). The United States, on behalf of itself and each State named as an interested party in the action, filed a notice of election to decline intervention in the Amended Complaint on October 12, 2022. (ECF No. 24). By Order of October 13, 2022, the Hon. Susan Davis Wigenton, U.S.D.J., unsealed the Amended Complaint, which the Relator then served upon Defendants. (ECF Nos. 25-29).[4] Defendants moved to dismiss on February 7, 2023, on grounds that the Amended Complaint contains impermissible group pleading, lacks sufficient particularity under Federal Rule of Civil Procedure 9(b), and fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36). Relator filed the instant Motion to Transfer Venue on February 13, 2023. (ECF No. 37).

The Court convened a case management conference on March 7, 2023, during which the undersigned solicited from the parties their positions as to the appropriate order of adjudication of the Motion to Dismiss and Motion to Transfer. Having considered the parties' respective views as set

---

[4] The record reflects that Defendant Highland Capital Management, L.P. was never served with the initial Complaint or Amended Complaint and, therefore, has never appeared in this action. (*See* ECF No. 55 at 1 n.1, 5; Exh. A, ECF No. 55-1). Although the parties argue extensively with regard to the views of this entity on the proposed transfer, Highland Capital Management, L.P. has submitted to the Court no formal position on the motion, nor has it otherwise participated in this action. The Court therefore adjudicates the instant motion without regard to the unbriefed views of this entity.

forth in the letters at ECF Nos. 59 and 60, and having found, for the reasons set forth below, that the merits of this case should be heard in an alternative forum, the Court exercises its discretion to decide the venue motion without first adjudicating the Motion to Dismiss. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95-96 (3d Cir. 2018) (explaining that "ensuring venue is proper before turning to the merits promotes finality interests and judicial economy"); *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) (courts have "discretion to address convenience-based venue issues" in the first instance).

## II. DISCUSSION

With the instant Motion, Relator asks the Court to exercise its discretion to transfer this action, in the interest of justice and for the convenience of all parties, to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). (ECF No. 37-1). Relator contends that "while [he] originally selected the District of New Jersey as his choice of forum, now that the government has declined to intervene and the case is entering a litigation posture," the proposed transferee forum is "far more convenient" because Relator is a resident of and all Defendants are headquartered in and around Dallas, Texas. (ECF No. 37-1 at 8-9). Relator submits that most witnesses are located in the transferee district and, to the extent that physical documents may be used as evidence in this case, those too "will likely be located in the Northern District of Texas […] in Defendants' possession or in possession of a local party or witness." (*Id.* at 11).

Relator further argues that the facts and events giving rise to his claims occurred in the Northern District of Texas, and, as such, that is the "center of gravity" of the case. (*Id.* at 9-10). Based on the following assertions, Relator contends that Texas is the "locus of operative facts" and, therefore, transfer to that district is appropriate: the principal office of each Defendant is located in or around Dallas; Defendants derive "significant economic benefits … from government program

beneficiaries and other patients located in the State of Texas"; Relator lives in Texas and worked for Defendant CCS from his home near Dallas, during which time he acquired knowledge of the practices and schemes alleged in his Complaint; Defendants' "fraudulent schemes were developed and implemented at offices in and around Dallas"; and the "majority of Defendants' employees who were required to collect patient [sic] and process patient information did so from offices near Dallas." (*Id.* at 10; ECF No. 58 at 8; Am. Compl., ¶ 13-14). As to this state's connection to the case, Relator acknowledges that, "[w]hile the Amended Complaint alleges that Defendants transacted business in New Jersey by shipping DMEPOS to patients there, no other conduct is alleged to have taken place in New Jersey." (ECF No. 37-1 at 6). Relator thus asserts that, although "it was reasonable to bring this case in the District of New Jersey, it is clear that the Northern District of Texas bears a stronger connection to this case." (ECF No. 37-1 at 5). Finally, Relator argues that he and all defendant entities would incur lesser costs if the case were litigated in their home state of Texas and that the interest of judicial economy would be served by the transfer given the relative congestion of the fora. (ECF No. 37-1 at 11-12).

Defendants, on the other hand, argue that, notwithstanding that Relator and all defendant entities are based in Texas, Relator has failed to meet his burden to demonstrate that transfer to the Northern District of Texas would be more convenient than continuing to litigate in this forum. (ECF No. 55 at 1, 11). Despite acknowledging that "no specific events took place in New Jersey," Defendants argue that because Relator originally chose to file his Complaint in this District, he must now "demonstrate[] that circumstances have substantially changed" to warrant transfer of the action. (*Id.* at 2, 10-11). Defendants further contend that Relator's request to transfer the action out of his originally chosen forum constitutes "gamesmanship," and that, in light of the pendency of their Motion to Dismiss, the Court should deny the transfer motion. (ECF No. 55 at 2-3, 14). In the

alternative, Defendants argue that the action should be transferred to the Middle District of Florida because that "is the location of certain business operations that are relevant to Relator's allegations." (ECF No. 55 at 20-21). Defendants assert *inter alia* that although they "have operations all over the country," the entities have "consolidated certain functions, like shipping, claim submission, patient billing, and compliance outside of Texas," and that "departments responsible for submitting claims to the government, patient billing and collection, and compliance are primarily located in Florida." (*Id.* at 23). Accordingly, Defendants argue that certain witnesses and documents relevant to Relator's claims are located in Florida. (*Id.* at 24).

The Court, having considered the parties' arguments, determines in its discretion that transfer to the Northern District of Texas is warranted for the reasons set forth below.

A. Legal Standard

Motions to transfer venue in federal court are governed either by Section 1406(a), which "provides for transfer from forums in which venue is wrongly or improperly laid," or Section 1404(a), which is "primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). The question of which Section applies, therefore, turns on whether venue in the original forum is proper. The general federal venue statute, 28 U.S.C. § 1391, states that venue is proper in:

"(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

28 U.S.C. § 1391(b).  The venue provision of the False Claims Act, 31 U.S.C. § 3732(a), further provides that venue is proper "in any judicial district in which the defendant or in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a).  Here, it is undisputed that Defendants can be found and transact business in this district.  (*See* ECF No. 37-1 at 5; 55 at 4, 17-18).  Furthermore, the Complaint alleges that "an act, proscribed by 31 U.S.C. § 3729, occurred in this District."  (Am. Compl. ¶¶ 28, 29).  Accordingly, venue is proper in the District of New Jersey under 31 U.S.C. § 3732(a) and, therefore, Section 1404(a) governs the instant transfer motion.

Section 1404(a) authorizes the Court, in its discretion, to transfer a civil action to any other district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice …" 28 U.S.C. § 1404(a).  The purpose of this transfer statute is "to avoid the waste of time, energy and money and, in addition, to safe guard litigants, witnesses and the public against avoidable inconvenience and expense." *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998) (citing *Ricoh Co. Ltd v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993)).

To adjudicate a § 1404(a) transfer motion, the Court must determine, as a preliminary matter, that the transferee venue is one in which the case might have originally been brought.  28 U.S.C. § 1404(a); *see American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1305 (D.N.J. 1990).  If that is so, the Court considers whether the requested transfer would promote the factors enumerated in § 1404(a):  the convenience of the parties, the convenience of witnesses, and the interests of justice.  28 U.S.C. § 1404(a); *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  In addition to these statutory factors, courts are to consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citations omitted).

"While there is no definitive formula or list of the factors to consider … courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

The private interests courts generally consider include the following: (1) "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* The public interests include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id*. at 879-80.

The movant bears the burden of establishing that transfer is warranted by showing that "the alternative venue is not only adequate, but also more convenient than the current one." *Fuller v. Insys Therapeutics, Inc,* No. 2:17-CV-07877-ES-SCM, 2018 WL 4275992, at *2 (D.N.J. Sept. 6, 2018) (citing *Honeywell*, 817 F. Supp. at 480 (D.N.J. 1993)). Where, as here, "it is the plaintiff seeking to transfer the case, the 'paramount consideration' given to the plaintiff's original choice of venue becomes a neutral factor." *Palazzo v. Ciurlino*, No. CIV A. 05-5093 JBS, 2006 WL 2177542, at *1 (D.N.J. July 28, 2006) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). Courts in this district "*may* require plaintiffs to show changed circumstances since initiating the action, but it is not a prerequisite to transfer. Rather, courts may consider the change in circumstances *or lack thereof*, as an additional factor, considered alongside the convenience and interests of justice factors."

*Fuller*, 2018 WL 4275992, at *2 (emphasis in original) (citing *Broadcom Corp. v. Qualcomm Inc.*, No. CIV.A.05-3350 (MLC), 2008 WL 3821404, at *6 (D.N.J. Aug. 12, 2008)).

  B. Analysis

Because transfer under § 1404 is permitted only "where both the original and the requested venue are proper," the Court, as an initial matter, must examine whether venue is proper in both the District of New Jersey and the Northern District of Texas. *Id.* at 878; *see Shutte*, 431 F.2d at 24 ("[T]ransfer is authorized by the statute only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; *i.e.*, venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants"). As stated above, under the FCA, venue is proper "in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). The parties do not dispute that Defendants transacted business in New Jersey and that, therefore, venue is proper in this District. (*See* ECF No. 37-1 at 5; 55 at 4, 17-18). The same is true of the Northern District of Texas, as there is no dispute that "each of the active Defendant Entities maintain a principal place of business" in Farmer's Branch, Texas. (*See* ECF Nos. 37-1 at 6 55 at 10-11). Accordingly, because Defendants can be found in and transact business in the Northern District of Texas, venue is proper in the proposed transferee forum, as well.[5]

---

[5] Because Defendants transact business and maintain their principal places of business in the Northern District of Texas, the parties do not dispute that each is subject to personal jurisdiction in the proposed transferee court under 28 U.S.C. § 1391(c). *See Broadcom Corp.*, 2008 WL 3821404, at *3 (finding defendant subject to personal jurisdiction in proposed transferee district pursuant to § 1391(c) because its principal place of business is there).

Having therefore found that the prerequisites for transfer under 28 U.S.C. § 1404(a) are satisfied, the Court proceeds to consider whether the proposed transfer is appropriate in light of the convenience and interest of justice factors enumerated above. *See Jumara*, 55 F.3d at 879.

i. *Private Interest Factors*

Although Relator initiated this action in the District of New Jersey, his initial choice of forum is entitled to less deference because "a substantial part of the alleged events in this action did not occur in New Jersey" – indeed, as Defendants point out and Relator acknowledges, "no specific events took place in New Jersey." *Broadcom Corp.*, 2008 WL 3821404, at *3; (ECF No. 55 at 11; *see* ECF No. 37-1 at 6). That neither Relator nor any entity defendant is a New Jersey citizen and that the "choice of forum had little connection with the action's operative facts" further lessen the import of Relator's original forum choice. *Id.* (citations omitted). Finally, Relator's "decision to seek to transfer the action undermines any weight given its initial choice of venue" and, therefore, the "original choice of a New Jersey venue is no impediment to transferring this action." *Id.* As such, factor one—plaintiff's choice of forum— is neutral for the purpose of this transfer analysis. *See Fuller*, 2018 WL 4275992, at *2.

Defendants maintain that this action should continue in the District of New Jersey but alternatively indicate a "strong preference" to litigate in the Middle District of Florida. (ECF No. 55 at 21). Defendants first argue that this Court should deny transfer despite the litigation having no material connection to New Jersey because they have "invested time and resources to litigate the case in this Court, including filing a Motion to Dismiss," and because Relator has not demonstrated changed circumstances since choosing to file the action in this District. (ECF No. 1-2, 8). Although Defendants assert that this case "has been pending for four years," in truth, Relator's Amended Complaint was not unsealed until October 2022 and, according to Defendants, "Relator then waited

nearly three months to serve the Defendant Entities with a copy of the Amended Complaint." (ECF No. 55 at 4). Therefore, the parties have been actively litigating this action for less than one year. To the Court's knowledge and in light of the preference of the assigned District Judge, the Honorable Susan D. Wigenton, U.S.D.J., that discovery be stayed during the pendency of a Rule 12 motion, no discovery has yet been taken. Moreover, because this Court finds as a threshold matter that the merits of this case should be adjudicated elsewhere given the patent lack of connection to this forum, that Defendants have filed a Motion to Dismiss in this District does not persuade the Court to keep this action given that the relevant factors point elsewhere. *See Reading Health Sys.*, 900 F.3d at 95 (explaining that "federal courts have flexibility to choose among alternate grounds for denying audience to a case on the merits") (internal quotations omitted). Defendants' alternative preference to proceed in the Middle District of Florida centers on assertions that certain witnesses and documents may be located there and that "judges in the Middle District of Florida have lower caseloads" than those in the Northern District of Texas and this District." (ECF No. 55 at 21, 23-25). As such arguments are germane to the *Jumara* factors of convenience and judicial economy, the Court will address those concerns in connection with those considerations, below.

The third factor, where the claim arose, plainly supports transfer to the Northern District of Texas. It is undisputed that Relator was employed by Defendant CCS in Texas. (*See* ECF Nos. 55 at 5; 37-1 at 10). The factual allegations in the Amended Complaint center on Relator's uncovering of alleged fraud and Defendants' handling of such information thereafter, which occurred during his employment in or near Dallas. In the Amended Complaint, Relator states that, during his full-time employ in Texas, he "acquired extensive, first-hand, inside knowledge of the schemes that form the basis of this Amended Complaint." (*See* Am. Compl., ECF No. 18 ¶ 13). He acquired such "substantial knowledge of CCS's practices and claims submissions … through his direct observations,

independent personal knowledge of Defendants' conduct, and documents in his possession," in and around Dallas, Texas. (*Id.* ¶ 14). The principal facts and events giving rise to the Relator's claims, therefore, occurred in the Northern District of Texas, and not in this District nor the Middle District of Florida.

As to considerations of party convenience, that factor likewise strongly supports transfer to the Northern District of Texas. Relator is a resident of Dallas and each entity defendant maintains its corporate headquarters in Farmers Branch, Texas, just outside of Dallas. (ECF Nos. 37-1 at 5; 55 at 1, 10-11). Whereas no party is located in the District of New Jersey, Relator lives in and high-ranking decisionmakers of each defendant entity are based in the transferee district. Accordingly, litigating this case in the Northern District of Texas would undoubtedly be more convenient and less costly for all parties to the action. As to the alternative proposed forum, the Middle District of Florida, Defendants make no argument that that forum would be more convenient for the *parties* and the Court finds no indication in the motion record that transfer to Florida would better promote convenience for the Relator or any defendant entity than would transfer to their home district in Texas. (*See* ECF No. 55 at 3). This factor, therefore, militates in favor of transfer to the Northern District of Texas.

With regard to the convenience of witnesses factor, it is clear that this District is not a convenient forum "given that none of the Defendants have ever had a branch or office in the state of New Jersey." (ECF No. 37-1 at 11). As to witness convenience, Relator reasons that, because the facts in his Complaint arise out of events that occurred and knowledge he acquired during his employment in Texas, "it is reasonable to assume that most of the witnesses will be located at or near that location." (ECF No. 37-1 at 10). Relator refers by name to several high-ranking CCS officials, with whom Relator, while working in Texas, discussed Defendants' alleged fraud. (*See* Am. Compl. ¶¶ 105-116). Because Farmers Branch, Texas holds the corporate nerve center of each defendant

entity, it is rational to presume that many of these executives likely to be called as witnesses live and work in that location.

Defendants, on the other hand, argue that "relevant witnesses that will likely be able to address Relator's allegations … are predominantly located in Florida." (ECF No. 55 at 23). In support of that argument, Defendants assert that, although they have operations all over the country," the "departments responsible for submitting claims to the government, patient billing and collection, and compliance are primarily located in Florida." (*Id.*). Defendants further state that two of the individuals identified in the Amended Complaint are located in Florida. (*Id.*). Defendants are silent, however, as to where the several other individuals identified in the pleading are located. (*See* Am. Compl. ¶¶ 105-113, naming David Boguslowski, Martin Cohen, Tamalee LynnKeeChow, Matthew Howland, and Ramon Rodriguez as relevant members of "CCS leadership team"). The Court notes that Defendants do not argue that "witnesses may be unavailable for trial" in any forum. *Jumara*, 55 F.3d at 879-80.

The Court, having reviewed the allegations in Relator's Amended Complaint (ECF No. 18), finds that the convenience-of-witnesses factor favors transfer to the Northern District of Texas. In his amended pleading, Relator claims that the alleged fraudulent practices at issue in this action were endorsed and directed by Defendants' "C-suite executives." (Am. Compl. ¶¶ 86-88, 106-109). It is these members of Defendants' leadership teams that Relator asserts were "aware of and directed" the alleged fraud, not those in the "Patient Support department … located in Florida." (*Id.* ¶¶ 112-13; ECF No. 55 at 23). As such, while neither party identifies who the critical witnesses will be or where they are located, in the absence of such information, the Court observes that Relator's allegations are of a corporate scheme devised at the highest levels of the defendant companies. Because each of the defendant companies maintains its principal place of business in Texas, the Court finds that it is more

likely that key witnesses will be within the 100-mile range of the subpoena power for trial in Texas than in Florida. *See* Fed. R. Civ. P. 45(b)(2) (limiting the federal subpoena power to within 100 miles of the courthouse); *Benson v. Biomet, Inc.*, No. CIV.A. 12-3618 WJM, 2012 WL 4442668, at *4 (D.N.J. Sept. 21, 2012) (noting that "forum's inability to reach non-party witnesses outside of this radius is therefore an important factor" in 1404(a) analysis). As to the Middle District of Florida, Defendants submit only general allegations that some corporation functions and two particular individuals are located in Florida. (*See* ECF No. 55 at 23-24). Because this case will likely require the testimony of high-level executives regarding corporate practices, the Court places greater weight on where those executives are likely to be located – at Defendants' corporate headquarters in Farmers Branch, Texas. This factor, therefore, supports transfer to the Northern District of Texas.

The final private interest factor, the location of books and records, has little impact on the Court's transfer decision, given that, "in the age of electronic discovery, the physical location of physical documents is of little significance." *Guarino v. W. Union Co.*, No. CV 20-5793, 2021 WL 3286640, at *10 (D.N.J. Aug. 2, 2021); *accord Meridian Consulting I Corp., Inc. v. Eurotec Canada Ltd.*, No. CV 19-22197 (KM)(ESK), 2021 WL 689132, at *15 (D.N.J. Feb. 22, 2021). Although Defendants submit that the entities "maintain a central repository of information, including the lists of patients receiving DMEPOS products, patient order forms, and patient billing records, in a database that is stored on primary servers located in Florida," there is no indication that those electronic records could not be produced in the Northern District of Texas. (ECF No. 55 at 24). Further, that certain boxes of physical records are located in a storage facility in Florida may, to some small extent, support transfer to the Middle District of Florida, but, again, the Court finds no reason that such materials could not be produced in the Northern District of Texas in alternative form, either by scan or by mail if necessary. *See Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468, 472 (D.N.J. 2007).

ii.   *Public Interest Factors*

The parties do not submit arguments as to the public interest factors concerning enforceability of the judgment, local interest in the controversy, public policies of the fora, or judicial familiarity with the applicable law. The Court, therefore, limits its public interest analysis to the "practical considerations that could make the trial easy, expeditious, or inexpensive" and "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879-80.

The Court finds that, on balance, the public interest factors favor transfer of this case to the Northern District of Texas. All parties to the action agree that no conduct significant to the litigation occurred in New Jersey. Jury considerations, therefore, support transfer out of this District, as jury duty "should not be imposed on the citizens of New Jersey when the events giving rise to the claim occurred outside the state." *Koeller v. Pilot Travel Centers, LLC*, No. CV22-2270 (CCC)(JSA), 2023 WL 3250512, at *6 (D.N.J. May 4, 2023). Conversely, because the Court finds that "a substantial amount of the alleged culpable conduct" occurred in the Northern District of Texas and all parties are citizens of that forum, transfer to that Court is appropriate. *Id.* (citations omitted). Similarly, without making a finding as to the relative congestion of the possible fora, the Court finds that judicial economy, "a cognizable public interest," does not favor this case remaining in this extraordinarily busy court. *In re: Howmedica Osteonics Corp*, 867 F.3d at 402 n.7. This action has no factual nexus to the District of New Jersey, the litigation is in its early stages, discovery has not begun, and the Court has relatively little familiarity with it other than through the instant motion. The interests of the public and of justice support transferring this action to the Northern District of Texas, where Relator's claims arose and where all parties are based.

iii.   *Changed Circumstances*

Defendants contend that the Court should deny Relator's request to transfer this action because the Government's decision not to intervene "cannot amount to changed circumstances warranting transfer[.]" (ECF No. 55) (quoting *United States ex rel. Fisher v. Bank of Am., N.A.*, 204 F. Supp. 3d 618, 626 (S.D.N.Y. 2016)). Relator's ability to establish such a change in circumstance, however, is not a prerequisite to transfer. *Fuller*, 2018 WL 4275992, at *3. While the Court does find that the Government's election to decline to intervene, alone, would not be a sufficiently strong reason to change the venue of this action, that is merely one factor to be considered "alongside the traditional convenience and interests of justice factors when a plaintiff seeks to transfer venue." *Id.* Having carefully balanced the relevant private and public interest factors and having found, for the foregoing reasons, that those factors weigh in favor of transfer to Northern District of Texas, the Court will grant Relator's motion.

### III.   CONCLUSION

For the reasons set forth above, the Motion to Transfer this action to the United States District Court for the Northern District of Texas is **GRANTED**.

**IT IS** on this day, June 30, 2023:

**ORDERED** that:

1. The Clerk of Court is directed to transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

2. The Clerk of Court is requested to terminate the Motion to Change Venue at ECF No. 37 and Motion to Withdraw at ECF No. 65.

_s/ Leda Dunn Wettre_  
Hon. Leda Dunn Wettre  
United States Magistrate Judge